UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

HERBERT MARTINEZ,

Plaintiff,

v.

DYCKMAN 101 LLC AND WS DYCKMAN, LLC,

Defendants.

---------------------------------------------------------------x

CV

COMPLAINT

JURY TRIAL REQUESTED

## COMPLAINT

Plaintiff Herbert Martinez (hereafter referred to as "Plaintiff"), by counsel, Hanski Partners LLC, as and for the Complaint in this action against Defendants Dyckman 101 LLC and WS Dyckman, LLC (together referred to as "Defendants"), hereby alleges as follows:

## NATURE OF THE CLAIMS

1. This lawsuit challenges pervasive, ongoing, and inexcusable disability discrimination by the Defendants. In this action, Plaintiff seeks declaratory, injunctive, and equitable relief, as well as monetary damages and attorney's fees, costs, and expenses to redress Defendants' unlawful disability discrimination against Plaintiff, in violation of Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et seq.* and its implementing regulations, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York State Executive Law ("Executive Law"), the New York State Civil Rights Law, § 40 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), Title 8 of the Administrative Code of the City of New York ("Administrative Code").

2. As explained more fully below, Defendants own, lease, lease to, operate, and control a place of public accommodation that violates the above-mentioned laws. Defendants are vicariously liable for the acts and omissions of their employees and agents for the conduct alleged herein.

3. These Defendants made a financial decision to ignore the explicit legal requirements for making their place of public accommodation accessible to persons with disabilities – all in the hopes that they would never be caught. In so doing, Defendants made a calculated, but unlawful, decision that disabled customers are not worthy. The day has come for Defendants to accept responsibility.

4. This action seeks to right that wrong via recompensing Plaintiff and making Defendants' place of public accommodation fully accessible so that Plaintiff can finally enjoy the full and equal opportunity that Defendants provide to non-disabled customers.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 12188, and 28 U.S.C. § 1331 as this action involves federal questions regarding the deprivation of Plaintiff's rights under the ADA.

6. This Court has supplemental jurisdiction over Plaintiff's related claims arising under the New York State and City laws pursuant to 28 U.S.C. § 1367(a).

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants' acts of discrimination alleged herein occurred in this district and Defendants' place of public accommodation that is the subject of this action is located in this district.

## PARTIES

8. At all times relevant to this action, Plaintiff Herbert Martinez has been and remains a resident of the State and City of New York.

9. At all times relevant to this action, Plaintiff Herbert Martinez has been and remains a wheelchair user. Plaintiff suffers from medical conditions that inhibit walking and restrict body motion range and movement.

10. Defendant Dyckman 101 LLC owns the property located at 103 Dyckman Street in New York County, New York (hereinafter referred to as "103 Dyckman Street").

11. At all relevant times, defendant WS Dyckman, LLC operates a fast-food chicken restaurant doing business as Wingstop.

12. At all relevant times, defendant WS Dyckman, LLC operates and/or leases from defendant Dyckman 101 LLC property located at 103 Dyckman Street in which the fast-food chicken restaurant doing business as Wingstop is located (hereinafter referred to as the "Wingstop premises").

13. Upon information and belief, Dyckman 101 LLC and WS Dyckman, LLC have a written lease agreement.

14. Each defendant is authorized to do and does business in New York State.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

15. Each of the Defendants is a public accommodation as they own, lease, lease to, control or operate a place of public accommodation, the Wingstop premises located at 103 Dyckman Street, within the meaning of the ADA (42 U.S.C. § 12181 and

28 C.F.R. § 36.104), the NYSHRL (Executive Law § 292(9)) and the NYCHRL (Administrative Code § 8-102).

16. The Wingstop premises is a place of public accommodation within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the NYSHRL (Executive Law § 292(9)) and the NYCHRL (Administrative Code § 8-102) as it is a facility operated by a private entity and its operations affect commerce.

17. Numerous architectural barriers exist at the Wingstop premises that prevent and/or restrict access to Plaintiff, a person with a disability, which include, but are not limited to, architectural barriers at the entrance, the entrance vestibule, and the paths of travel.

18. Upon information and belief, at some time after January 1992, alterations were made to 103 Dyckman Street, including areas adjacent and/or attached to 103 Dyckman Street.

19. Upon information and belief, at some time after January 1992, alterations were made to the Wingstop premises, and to areas of 103 Dyckman Street related to the Wingstop premises. New York City Department of Buildings records identify Job No. M01032004 at 103 Dyckman Street, including a general-construction filing submitted on April 8, 2024, with reported costs of $144,900, and subsequent mechanical, plumbing, and structural filings. The reported costs for the job total approximately $310,200 and Letters of Completion have been issued for the job.

20. Within the three years preceding the filing of this action, Plaintiff attempted to and desired to access, and in fact patronized, the Wingstop premises.

21. Plaintiff, however, was and is unable to equally and independently access the Wingstop premises as it is not readily accessible to, or usable by Plaintiff.

22. The services, features, elements and spaces of the Wingstop premises are not readily accessible to, or usable by Plaintiff as required by the 1991 ADA Standards for Accessible Design codified in 28 C.F.R. Part 36, Appendix D (hereinafter referred to as the "1991 Standards" or the "1991 ADA") or in the 2010 ADA Standards for Accessible Design codified in 36 C.F.R. part 1191, Appendices B and D and 28 C.F.R. part 36 subpart D (hereinafter referred to as the "2010 Standards" or the "2010 ADA").

23. Because of Defendants' failure to comply with the above-mentioned laws, including but not limited to the ADA, the NYSHRL, the NYCHRL, the 1991 Standards or the 2010 Standards and the Administrative Code, Plaintiff was and has been unable to enjoy safe, equal, and complete access to all of the areas of the Wingstop premises that are open and available to the public.

24. Defendants' place of public accommodation has not been designed, constructed, or altered in compliance with the 1991 Standards, the 2010 Standards, the 1968 New York City Building Code, Administrative Code, Title 27 ("1968 BC"), including the 1968 BC Reference Standard ANSI 117.1-1986 ("1968 Ref Std"), the 2008 New York City Building Code ("2008 BC") including the 2008 BC Reference Standard ICC/ANSI 117.1 2003 ("2008 Ref Std"), the 2014 New York City Building Code ("2014 BC") including the 2014 BC Reference Standard ICC/ANSI 117.1 2009 ("2014/2022 Ref Std") and the 2022 New York City Building Code ("2022 BC") including the 2014/2022 Ref Std.

25. Barriers to access that Plaintiff encountered and/or which deter Plaintiff from patronizing the Wingstop premises as well as architectural barriers that exist include, but are not limited to, the following:

I. The public/primary entrance of the Wingstop premises is not accessible.
*Defendants fail to provide that at least 50% of all its public entrances are accessible. See 1991 ADA § 4.1.3(8)(a)(i).*
*Defendants fail to provide that at least 60% of all its public entrances are accessible. See 2010 ADA § 206.4.1.*
*Defendants fail to provide that primary entrances are accessible. See 1968 BC § 27-292.5(a).*
*Defendants fail to provide that all of its public entrances are accessible. See 2008 BC § 1105.1; 2014 BC § 1105.1; and 2022 BC § 1105.1.*

II. No signage identifies an accessible public entrance to the Wingstop premises (to the extent Defendants claim they provide an accessible public entrance).
*Defendants fail to display signage (marked with the International Symbol of Accessibility or otherwise) that identifies an accessible entrance. See 1991 ADA §§ 4.1.2(7)(c); 4.1.3(8)(d); and 4.1.6(1)(h); 2010 ADA § 216.6; 1968 BC § 27-292.18; 2008 BC § 1110; 2014 BC §§ 1101.3.4 and 1110; and 2022 BC §§ 1101.3.4 and 1111.*

III. There is no directional signage at the inaccessible public entrance to the Wingstop premises that indicates the location of an accessible entrance to the Wingstop premises (to the extent Defendants claim they provide an accessible entrance).
*Defendants do not provide and display signage at the inaccessible public entrance (marked with the International Symbol of Accessibility or otherwise) that indicates the location of an accessible entrance. See 1991 ADA §§ 4.1.6(1)(h) and 4.1.3(8)(d); and 2010 ADA § 216.6.*
*Defendants fail to provide directional signage at necessary locations. See 1968 BC § 27-292.18(b).*
*Defendants fail to provide directional signage by the inaccessible entrance indicating the route to the nearest accessible entrance. See 2008 BC § 1110.2; 2014 BC §§ 1101.3.3 and 1110.2; and 2022 BC §§ 1101.3.3 and 1111.2.*

IV. The entrance to the Wingstop premises has two doors in series with less than 48 inches between them.
*At two doors in a series (or a vestibule), Defendants fail to provide a level floor area that is at least 48 inches between the two doors plus the width of doors swinging into the space. See 1991 ADA § 4.13.7; 2010 ADA § 404.2.6; 1968 Ref Std § 4.13.7; 2008 Ref Std § 404.2.5; and 2014/2022 Ref Std § 404.2.5.*

V. The floor in the vestibule between the two doors in series is sloped greater than 2%, not providing level maneuvering clearances at the doors. *Defendants fail to provide that the floor or ground surface within required maneuvering clearances at doors has a slope not steeper than 1:48 (2.0%) and no changes in level. See 1991 ADA § 4.13.6; 2010 ADA § 404.2.4.4; 1968 Ref Std § 4.13.6; 2008 Ref Std § 404.2.3.5; and 2014/2022 Ref Std § 404.2.3.1.*

VI. The public entrance, which is also an exit, is not accessible for the reasons described above. *Defendants fail to provide accessible means of egress in the number required by the code. See 1991 ADA § 4.1.3(9); 2010 ADA § 207.1; 1968 BC §§ 27-292.1 and 27-357(d); 2008 BC § 1007.1; and 2014 BC § 1007.1; and 2022 BC § 1009.1.*

26. Plaintiff either personally encountered or has knowledge of such barriers to access.

27. Upon information and belief, a full inspection of the Wingstop premises will reveal the existence of other barriers to access.

28. To ensure Defendants properly remedy their discriminatory violations and to avoid piecemeal litigation, Plaintiff requires a full inspection of the Wingstop premises in order to catalogue all of the areas of non-compliance with the ADA, the NYSHRL and the NYCHRL. Notice is therefore given that Plaintiff intends to amend the Complaint to include any violations discovered during an inspection that are not contained in this Complaint.

29. Defendants have denied Plaintiff the opportunity to participate in or benefit from services or accommodations because of disability.

30. Defendants have not satisfied their statutory obligation to ensure that their policies, practices, and procedures for persons with disabilities are compliant with the laws. Nor have Defendants made or provided accommodations or modifications to persons with disabilities.

31. Plaintiff has a realistic, credible, and continuing threat of discrimination from the Defendants' non-compliance with the laws prohibiting disability discrimination. The barriers to access within the Wingstop premises continue to exist and deter Plaintiff.

32. The Wingstop premises is located in the Inwood neighborhood of Manhattan, on the Dyckman Street retail corridor.

33. The Dyckman Street retail corridor is a C4-4 commercial zoning district.

34. C4 Districts are mapped in regional centers where larger stores and theaters serve a wider region and generate more traffic than neighborhood shopping areas.

35. Plaintiff resides in the Inwood neighborhood of Manhattan.

36. Plaintiff frequently goes to the Dyckman Street retail area where the Wingstop premises is located due to its vast commercial offerings and proximity to his residence.

37. When Plaintiff is in the mood for chicken, one establishment he will patronize is the Wingstop premises.

38. Plaintiff patronizes the Wingstop premises at least six times a year.

39. Plaintiff's past orders at the Wingstop premises have included a Chicken Sandwich Combo with Mango Habanero, seasoned fries, ranch dip, and a 20 oz soft drink, a Chicken Sandwich Combo with Lemon Pepper, seasoned fries, ranch dip, and 20 oz soft drink, and the 6-piece Classic Combo with Lemon Pepper Chili Glaze, honey mustard dip, seasoned fries and 20 oz soft drink.

40. Most recently, Plaintiff has patronized the Wingstop premises on or about July 15, 2026 and October 6, 2026.

41. While Plaintiff likes the chicken served at the Wingstop premises, he does not like the discrimination he must endure to patronize the restaurant.

42. Each time Plaintiff patronizes the Wingstop premises, he must overcome architectural barriers at the public entrance in order to do so.

43. Being forced to overcome architectural barriers to patronize the Wingstop premises mars Plaintiff's dining experience.

44. First, the entrance to the Wingstop premises consists of two doors in series, and there is insufficient space between the two doors, which hinders Plaintiff's ability to enter and exit.

45. Second, the floor within the vestibule between the two doors in series is sloped, and there is therefore no clear, level space within the vestibule for the maneuvering clearances required at the doors.

46. Because of these barriers, Plaintiff cannot enter or exit the Wingstop premises on his own and must ask a stranger for assistance each time in order to ingress or egress.

47. Because of those barriers, Plaintiff does not enjoy the same full, equal and independent access to the Wingstop premises as non-disabled patrons, who are not required to overcome such barriers each time they patronize the premises.

48. By maintaining the architectural barriers at the Wingstop premises, Defendants deny Plaintiff equal opportunity to enjoy the Wingstop premises.

49. Because Plaintiff enjoys the food served at the Wingstop premises, once Defendants remediate the Wingstop premises to comply with the 1991 Standards or the 2010 Standards and the architectural accessibility requirements of the Administrative

Code, Plaintiff will enjoy having equal and independent access to the Wingstop premises free from the discrimination that he currently suffers when patronizing the Wingstop premises.

50. Plaintiff intends to continue to patronize the Wingstop premises multiple times a year and will enjoy having full and equal enjoyment once it becomes fully accessible and compliant with the 1991 Standards or the 2010 Standards, and the Administrative Code.

51. Plaintiff continues to suffer an injury due to Defendants' maintenance of architectural barriers at the Wingstop premises. This is because Plaintiff desires to patronize the Wingstop premises without being discriminated against but Defendants deny Plaintiff the opportunity to do so based on disability because they maintain architectural barriers at the Wingstop premises.

52. Plaintiff continues to suffer an injury due to Defendants' maintenance of architectural barriers. This is because Defendants discriminate against him in violation of the ADA, the NYSHRL and the NYCHRL as they created, maintain and have failed to remove the architectural barriers.

53. Defendants discriminate against Plaintiff in violation of the ADA, the NYSHRL and the NYCHRL as they created, maintain and have failed to remove architectural barriers to wheelchair access at the Wingstop premises.

## FIRST CAUSE OF ACTION
## (VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT)

54. Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

55. Plaintiff is substantially limited in the major life activities of both walking and body motion range and thus has a disability within the meaning of the ADA. As a direct and proximate result of Plaintiff's disability, Plaintiff uses a wheelchair for mobility, and also has restricted use of arms and hands.

56. The ADA imposes joint and several liability on both the property owner and lessee of a public accommodation. 28 C.F.R. § 36.201(b).

57. Under the ADA, both the property owner and lessee are liable to the Plaintiff, and neither can escape liability by transferring their obligations to the other by contract (*i.e.* lease agreement). 28 C.F.R. § 36.201(b).

58. Defendants have and continue to subject Plaintiff to disparate treatment by denying Plaintiff full and equal opportunity to use their place of public accommodation all because Plaintiff is disabled. Defendants' policies and practices have and continue to subject Plaintiff to disparate treatment and disparate impact.

59. By failing to comply with the law in effect for decades, Defendants have communicated to disabled persons such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

60. The Wingstop premises is not fully accessible and fails to provide an integrated and equal setting for persons with disabilities, all in violation of 42 U.S.C. § 12182(b)(1)(B) and 28 C.F.R. § 36.203.

61. Defendants failed to make alterations accessible to the maximum extent feasible in violation of 28 C.F.R. §§ 36.402 and 36.406 and 42 U.S.C. § 12183(a)(2).

62. The paths of travel to the altered primary function areas were not made accessible in violation of 28 C.F.R. § 36.403.

63. Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of 28 C.F.R. § 36.304. It would be readily achievable to make Defendants' place of public accommodation fully accessible.

64. By failing to remove the barriers to access where it is readily achievable to do so, Defendants have discriminated against Plaintiff on the basis of disability in violation of § 302(a) and 302(b)(2)(A)(iv) of the ADA, 42 U.S.C. § 12182(a), (b)(2)(A)(iv), and 28 C.F.R. § 36.304.

65. In the alternative, Defendants have violated the ADA by failing to provide Plaintiff with reasonable alternatives to barrier removal as required by 28 C.F.R. § 36.305.

66. Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et seq.*, and 28 C.F.R. § 36.101 *et seq.*

67. Defendants' failure to remove the barriers to access continues to deny Plaintiff independent and equal access to the Wingstop premises.

68. Defendants have and continue to discriminate against Plaintiff in violation of the ADA by maintaining and/or creating an inaccessible public accommodation.

**SECOND CAUSE OF ACTION**
**(VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW)**

69. Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

70. Plaintiff suffers from various medical conditions that separately and together prevent the exercise of normal bodily functions in Plaintiff; in particular, the life

activities of both walking and body motion range. Plaintiff therefore suffers from a disability within the meaning of the Executive Law § 292(21).

71. In 2019, the New York State legislature enacted legislation that provides effective immediately that the New York State Human Rights Law shall be "construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed". See Executive Law § 300 [effective date: August 12, 2019].

72. By amending Executive Law § 300 to mirror the text of the New York City Local Civil Rights Restoration Act of 2005 (Local Law 85 of 2005), the New York State legislature confirmed the legislative intent to abolish parallel construction between the New York State Human Rights Law and related Federal anti-discrimination laws.

73. Defendants have and continue to subject Plaintiff to disparate treatment by denying Plaintiff equal opportunity to use their place of public accommodation all because Plaintiff is disabled.

74. Defendants discriminated against Plaintiff in violation of NYSHRL (Executive Law § 296(2)), by maintaining and/or creating an inaccessible place of public accommodation. Each of the Defendants has aided and abetted others in committing disability discrimination in violation of NYSHRL (Executive Law § 296(6)).

75. Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of NYSHRL (Executive Law § 296(2)(c)(iii)).

76. In the alternative, Defendants have failed to provide Plaintiff with reasonable alternatives to barrier removal as required by NYSHRL (Executive Law § 296(2)(c)(v)).

77. It would be readily achievable to make Defendants' place of public accommodation fully accessible.

78. It would not impose an undue hardship or undue burden on Defendants to make their place of public accommodation fully accessible.

79. As a direct and proximate result of Defendants' unlawful discrimination in violation of NYSHRL, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

80. Plaintiff experiences humiliation each time he patronizes the Wingstop premises and re-encounters the discriminatory treatment he endured and endures, specifically the inability to enter the Wingstop premises without assistance due to the architectural barriers at the Wingstop premises.

81. Plaintiff feels stress and anxiety knowing that due to disability Defendants deny him full, independent and equal use of the restaurant which they make readily accessible to non-disabled individuals.

82. Defendants' conduct has deprived Plaintiff of the dignity and equal treatment guaranteed by the NYSHRL.

83. Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**(VIOLATIONS OF THE NEW YORK CITY HUMAN RIGHTS LAW)**

84. Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

85. Plaintiff suffers from various medical conditions that separately and together, impair Plaintiff's bodily systems - in particular, the life activity of both walking and body motion range -and thus Plaintiff has a disability within the meaning of the NYCHRL (Administrative Code § 8-102).

86. The Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), also known as Local Law 85, clarified the scope of the Administrative Code in relation to the NYCHRL. The Restoration Act confirmed the legislative intent to abolish "parallelism" between the NYCHRL and the Federal and New York State anti-discrimination laws by stating as follows:

> The provisions of this title shall be *construed liberally* for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed.

Restoration Act § 7 amending Administrative Code §8-130 of the NYCHRL (emphasis added). The Restoration Act is to be construed broadly in favor of Plaintiff to the fullest extent possible. See also New York City Local Law 35 of 2016.

87. Defendants have and continue to subject Plaintiff to disparate treatment and disparate impact by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their place of public accommodation all because of disability in violation of the NYCHRL (Administrative Code § 8-107(4)). Each of the Defendants has aided and abetted others in committing disability discrimination.

88. Defendants have and continue to commit disability discrimination in violation of the Administrative Code (inclusive of § 8-107(4)) because of the violations of the ADA as alleged herein.

89. Defendants have and continue to commit disability discrimination in violation of the Administrative Code (inclusive of § 8-107(4)) because of the violations of the New York City Building Code as alleged herein.

90. Defendants have discriminated, and continue to discriminate, against Plaintiff in violation of the NYCHRL (Administrative Code § 8-107(4)) by designing, creating and/or maintaining an inaccessible commercial facility/space.

91. Defendants have subjected, and continue to subject, Plaintiff to disparate treatment by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space all because of disability in violation of the NYCHRL (Administrative Code § 8-107(4)).

92. Defendants' policies and procedures inclusive of the policies of refusing to expend funds to design, create and/or maintain an accessible commercial facility/space is a discriminatory practice in violation of NYCHRL (Administrative Code § 8-107(4)).

93. Defendants knew or should have known that the Wingstop premises was open and made available to members of the public, including wheelchair users such as Plaintiff, to purchase and consume the food and beverages offered there. Through reasonable inspection, operation, and maintenance of the areas within their ownership or control, Defendants also knew or should have known that the conditions described herein, including the inaccessible public entrance interfered with wheelchair users' ability to

independently access and fully and equally use and enjoy the premises' goods, services, facilities, privileges, advantages, and accommodations.

94. Plaintiff's use of a wheelchair and resulting mobility limitations are open and obvious. During each visit, Plaintiff entered the Wingstop premises using his wheelchair and interacted with Defendants' employees while ordering and paying for his purchases. Defendants therefore knew or should have known of Plaintiff's disability and resulting need for accessible facilities.

95. Defendants' failure to provide reasonable accommodations for persons with disabilities, inclusive of Defendants' failure to remove the barriers to access identified herein, and their consequent denial of equal opportunity to Plaintiff, constitutes an ongoing continuous pattern and practice of disability discrimination in violation of NYCHRL (Administrative Code §§ 8-107(4) and 8-107(15)).

96. In violation of the NYCHRL (Administrative Code § 8-107(6)), Defendants have and continue to aid and abet, incite, compel, or coerce each other in each of the other Defendants' attempts to, and in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space and the place of public accommodation therein, all because of disability, as well as other acts in violation of the NYCHRL.

97. Administrative Code §§ 19-152 and 7-210 impose a non-delegable duty on the property owner to repave, reconstruct, repair, and maintain its abutting public sidewalk. As a result, Dyckman 101 LLC continuously controlled, managed, and operated the public sidewalk abutting 103 Dyckman Street, which includes the portion of the sidewalk constituting the entrance to Defendants' place of public accommodation.

98. Dyckman 101 LLC's failure to construct and maintain an accessible entrance from the public sidewalk to Defendants' place of public accommodation constitutes disability discrimination in a violation of the Administrative Code.

99. Defendants discriminated against Plaintiff in violation of the NYCHRL (Administrative Code, § 8-107(4)) by maintaining and/or creating an inaccessible public accommodation.

100. Defendants' conduct also violates the NYCHRL, Administrative Code § 8-107(17), which states that "an unlawful discriminatory practice . . . is established . . . [when plaintiff] demonstrates that a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of this chapter."

101. Because Defendants' public accommodation is not readily accessible and usable by people with disabilities, Defendants have demonstrated a policy or practice that has a disproportionately negative impact on persons with disabilities (including Plaintiff).

102. Defendants' conduct constitutes an ongoing and continuous violation of the NYCHRL. Unless Defendants are enjoined from further violations, Plaintiff will continue to suffer injuries for which there is no adequate remedy at law. In particular, Plaintiff will suffer irreparable harm by being denied the accommodations, advantages, facilities, or privileges of the Defendants' public accommodation.

103. As a direct and proximate result of Defendants' unlawful discrimination in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, stress, and embarrassment.

104. Plaintiff experiences humiliation each time he patronizes the Wingstop premises and re-encounters the discriminatory treatment he endured and endures due to the architectural barriers at the Wingstop premises.

105. Plaintiff feels stress and anxiety knowing that due to disability Defendants deny him full, independent and equal use of the restaurant which they make readily accessible to non-disabled individuals.

106. Defendants' conduct has deprived Plaintiff of the dignity and equal treatment guaranteed by the NYCHRL.

107. Upon information and belief, Defendants' long-standing refusal to make their place of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to Plaintiff's rights under the NYCHRL.

108. By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

109. Defendants engaged in discrimination with willful or wanton negligence, and/or recklessness, and/or a conscious disregard of the rights of others and/or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages pursuant to NYCHRL (Administrative Code § 8-502).

110. By refusing to make their place of public accommodation accessible, Defendants have unlawfully profited from their discriminatory conduct by collecting revenue from a non-compliant space and pocketing the money that they should have

lawfully expended to pay for a fully compliant and accessible space. Defendants' unlawful profits plus interest must be disgorged.

111. Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(VIOLATIONS OF THE NEW YORK STATE CIVIL RIGHTS LAW)**

112. Plaintiff realleges and incorporates by reference all allegations previously set forth in this Complaint as if fully set forth herein.

113. As set forth in Plaintiff's Second Cause of Action, Plaintiff is an individual with a disability pursuant to Executive Law § 292(21).

114. As set forth in Plaintiff's Second Cause of Action, Defendants discriminated against Plaintiff because of disability in violation of the NYSHRL.

115. As set forth in Plaintiff's Second Cause of Action, Defendants continue to subject Plaintiff to discrimination because of disability in violation of the NYSHRL.

116. Defendants violated and continue to violate Civil Rights Law § 40-c by subjecting Plaintiff to discrimination in violation of the NYSHRL.

117. Plaintiff, the individual subjected to discrimination by Defendants, is a "person aggrieved" pursuant to Civil Rights Law § 40-d.

118. An entity that violates Civil Rights Law § 40-c is liable for a penalty of not less than one hundred dollars ($100) nor more than five hundred dollars ($500), for each and every violation of section 40-c. Civil Rights Law § 40-d.

119. The penalty for each and every violation of section 40-c is recoverable by Plaintiff, as the person aggrieved.

120. Each time Plaintiff patronized or desired to patronize Defendants' establishment and was subjected to or deterred by the Wingstop premises' inaccessibility constitutes a separate violation of the NYSHRL and Civil Rights Law § 40-c.

121. Plaintiff is entitled to recover the monetary penalty prescribed by Civil Rights Law § 40-d for each and every violation of Civil Rights Law § 40-c.

122. Notice of this action has been served upon the Attorney General as required by Civil Rights Law § 40-d.

## INJUNCTIVE RELIEF

123. Plaintiff will continue to experience unlawful discrimination as a result of Defendants' failure to comply with the above-mentioned laws. Therefore, injunctive relief is necessary to order Defendants to alter and modify their place of public accommodation and their operations, policies, practices, and procedures.

124. Injunctive relief is also necessary to make Defendants' facilities readily accessible to and usable by Plaintiff in accordance with the above-mentioned laws.

125. Injunctive relief is further necessary to order Defendants to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the ADA, NYSHRL, and the NYCHRL.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against the Defendants, jointly and severally, in favor of Plaintiff that contains the following relief:

A. Enter declaratory judgment declaring that Defendants have violated the ADA and its implementing regulations, the NYSHRL, and the NYCHRL and declaring the rights of Plaintiff as to Defendants' place of public accommodation, and Defendants' policies, practices, and procedures;

B. Issue a permanent injunction ordering **Defendants to close and cease all business** until Defendants remove all violations of the ADA, the 1991 Standards or the 2010 Standards, the NYSHRL, and the NYCHRL, including but not limited to the violations set forth above;

C. Retain jurisdiction over the Defendants until the Court is satisfied that the Defendants' unlawful practices, acts and omissions no longer exist and will not reoccur and to enforce the terms of the injunction, including by awarding the post-injunction fees and expenses requested below;

D. Award Plaintiff compensatory damages as a result of Defendants' violations of the NYSHRL and the NYCHRL;

E. Award Plaintiff punitive damages in order to punish and deter the Defendants for their violations of the NYCHRL;

F. Award Plaintiff the monetary penalties for each and every violation of the law, per defendant, pursuant to New York State Civil Rights Law §§ 40-c and 40-d;

G. Find that Plaintiff is a prevailing party and award reasonable attorney's fees, costs, and expenses pursuant to the NYSHRL and the NYCHRL;

H. Find that Plaintiff is a prevailing party and award reasonable attorney's fees, costs, and expenses pursuant to the ADA;

I. Award Plaintiff reasonable attorney's fees, costs, and expenses incurred after entry of the injunction or judgment in monitoring, verifying, and enforcing Defendants' compliance, in an amount to be determined upon application to the Court; and

J. For such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: October 30, 2026

Respectfully submitted,

**HANSKI PARTNERS LLC**

By: /s/ Robert G. Hanski
Robert G. Hanski, Esq.
*Attorneys for Plaintiff*
4 International Drive, Suite 110
Rye Brook, NY 10573
Telephone: (212) 248-7400
Email: rgh@disabilityrightsny.com